CROSBY v STERNER SHEET METAL & ROOFING COMPANY

1. WORKMEN'S COMPENSATION—STATUTES—EXTREMITIES—LOSS OF IN-
   DUSTRIAL USE.

   Direct injury to the extremities is not a prerequisite for establish-
   ing loss of industrial use of the extremities under the Work-
   men's Compensation Act, and an injured employee is not
   prevented from establishing loss of industrial use merely be-
   cause the condition which is aggravated by use of the extremi-
   ties is also aggravated by the receipt of other stimuli in a
   manner which would not satisfy the statutory requirements
   enabling a person to receive further benefits (MCLA
   418.361[2][g]).

2. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
   EXTREMITIES—LOSS OF INDUSTRIAL USE

   Disabling symptoms are traceable to use of the limbs when they
   are due to an impairment of another bodily mechanism, includ-
   ing a heart condition, which is aggravated by leg movement,
   and workmen's compensation for total and permanent disabil-
   ity is payable when a non-limb malady is triggered by the use
   of the arms or legs and it is that condition which prevents use
   of the arms or legs in industry.

3. WORKMEN'S COMPENSATION—APPEAL AND ERROR—APPEAL BOARD—
   FINDINGS OF FACT—PROPER LEGAL STANDARDS.

   The Court of Appeals remands a case to the Workmen's Compen-
   sation Appeal Board for consideration of claim in accordance
   with the proper legal standard where the appeal board has not
   made findings of fact with consideration for the proper legal
   standard.

Appeal from Workmen's Compensation Appeal
Board. Submitted October 10, 1973, at Lansing.
(Docket No. 16432.) Decided January 16, 1974.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation §§ 287, 288.
[3] 58 Am Jur, Workmen's Compensation §§ 529, 530.

Application by Lynus Crosby for hearing and adjustment of his claim for workmen's compensation benefits against his employer, Sterner Sheet Metal & Roofing Company. Benefits awarded. Plaintiff then applied against his employer, the employer's liability insurer, and the Second Injury Fund for further benefits for total disability. Further benefits denied. Plaintiff appeals. Reversed and remanded.

*Smith, Bovill, Joseph & Wolf, P. C. (John D. MacKenzie,* of counsel), for plaintiff.

*Davidson & Breen,* for defendants Sterner Sheet Metal & Roofing Company and Zurich Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard,* Assistant Attorney General, for defendant Second Injury Fund.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

V. J. BRENNAN, J. On March 7, 1961, plaintiff, Lynus Crosby, suffered an injury to his heart as the result of an accident which occurred while he and several fellow employees were attempting to extricate a tar kettle from mud at Central Michigan University. On appeal from a hearing referee's denial of benefits, the Workmen's Compensation Appeal Board held that plaintiff's disability arose out of and in the course of his employment and

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

was, therefore, compensable. Defendant's application for leave to appeal that decision was denied by this Court on June 29, 1966. Plaintiff, thereupon, in conformance with the appeal board's order, received compensation benefits until October 6, 1970, 500 weeks from the date of his injury. Prior to this time, however, plaintiff filed a petition seeking further benefits for total and permanent disability due to the alleged loss of industrial use of his extremities.[1] The evidence presented in support of this claim consisted solely of the depositions of plaintiff and his physician, Dr. Robert D. Gilmore.

In his deposition, Dr. Gilmore stated that he originally found plaintiff to be suffering from angina pectoris, auricular fibrillation, and atrial flutters[2] and that plaintiff's condition had subsequently worsened. He related that plaintiff was hospitalized in 1968 for acute pulmonary edema. He testified that any type of physical exertion by plaintiff could cause severe chest pains and another bout of pulmonary edema with the possibility of congestive failure. Dr. Gilmore further stated that although there was nothing physically wrong with plaintiff's arms or legs, it was his opinion that plaintiff could no longer engage in any type of industrial activity because of the exertion it would place on his heart. He stated that it was through the use of plaintiff's arms and legs in physical activity that the complications outlined above would be likely to result. Dr. Gilmore finally

[1] Formerly MCLA 412.10(b)(7); MSA 17.160(b)(7) now MCLA 418.361(2)(g); MSA 17.237(361)(2)(g).

[2] These terms refer to abnormal conditions of that part of the cardio-vascular system which is in and contiguous to the heart. These conditions are manifested through chest pain and abnormal contraction of the auricles or atria of the heart. The Workmen's Compensation Appeal Board, with respect to plaintiff's initial claim, specifically found that these conditions resulted from the 1961 accident.

stated that the sole cause of plaintiff's inability to so use his arms and legs was the injury plaintiff suffered in 1961.

Plaintiff, in his deposition, admitted that the original accident caused no direct injury to his arms or legs but stated that when he engaged in any physical activity he experienced pain in the area of his heart. He testified that this pain even occurs when he merely walks or lifts his left arm above his head. He further testified that when this occurs he is forced to stop whatever he is doing, take medication, and rest.

On these facts the hearing referee denied plaintiff's claim for further benefits stating:

"Plaintiff did receive an injury on 3/7/61 which caused a disabling heart condition. * * * He has continued to remain disabled by reason of the heart condition and has been paid compensation for 500 weeks. While I sympathize with plaintiff, I cannot find that his claim of 'loss of industrial use of his extremities' because he cannot walk too far or cannot swing his left arm too high without getting chest pains, qualifies him for further benefit."

This determination was upheld by the appeal board who found that plaintiff failed to establish the loss of industrial use of two or more limbs even though he did establish that he was totally disabled. The appeal board specifically found that plaintiff's chest pains originate from any type of exertion and admitted that it is difficult to exert one's self without using the extremities. They felt, however, in light of our Supreme Court's holding in *Miller v Sullivan Milk Products, Inc,* 385 Mich 659; 189 NW2d 304 (1971), that plaintiff merely suffered a general disability and not a compensable one. It is from this decision that plaintiff appeals.

Plaintiff contends that the appeal board employed an erroneous standard in determining whether he had lost the industrial use of his extremities. We agree. It is now clear that direct injury to the extremities is not a prerequisite for establishing loss of industrial use. *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963); *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970), *leave denied,* 384 Mich 823 (1971). It is also clear that a plaintiff is not prevented from establishing loss of industrial use merely because the condition which is aggravated by use of the extremities is also aggravated by the receipt of other stimuli in a manner which would not satisfy the statutory requirements enabling a person to receive further benefits. *Lockwood v Continental Motors Corp, supra.* The appropriate legal principle by which we are guided was stated by now Justice LEVIN in the following terms:

> "[A] teaching of *Paulson* is that disabling symtoms are traceable to use of the lower limbs when they are due to an impairment of another bodily mechanism which is aggravated by leg movement, that compensation for total and permanent disability is payable when a non-leg malady is triggered by the use of the legs and it is that condition which prevents use of the legs in industry." *Lockwood v Continental Motors Corp, supra* at 603; 183 NW2d at 810.

In their decision the appeal board stated, and defendants here contend, that the rationale of *Paulson* and *Lockwood* does not apply to heart cases. This issue was decided in *Drake v Norge Division, Borg-Warner Corp,* 48 Mich App 88; 210 NW2d 131 (1973), contrary to defendants' contention and we agree with that determination. The standard which the appeal board should have

applied to determine whether plaintiff was entitled to further benefits was that enunciated in *Paulson and Lockwood.*

Judged by the above standard it appears to us that there is sufficient evidence on the record to support plaintiff's claim for further benefits. The testimony presented to the appeal board appears to us to establish that plaintiff's heart condition is "aggravated by leg movement" and that the disabling chest pains are "triggered by the use of the legs". That plaintiff suffers from a disabling heart condition acquired in a work-related accident is beyond dispute. The depositions of plaintiff and his doctor reveal that when plaintiff uses his legs to perform even the simple task of walking he is subjected to acute chest pains necessitating immediate rest and medication as a result of the exertion this ordinarily insignificant activity places on his heart. However, it is not our function to sit as a factfinder in cases where the appeal board "has not made findings of fact with consideration for the proper legal standard". *Wright v Thumb Electric Cooperative,* 49 Mich App 714; 212 NW2d 607 (1973). Accordingly, we reverse and remand this case to the appeal board for consideration of plaintiff's claim in accordance with the proper legal standard. If the appeal board finds that plaintiff's heart condition is "aggravated" or "triggered" by use or movement of the arms or legs and that it is that condition which prevents their use in industry then plaintiff is entitled to prevail.

Reversed and remanded for proceedings not inconsistent with the opinion.

All concurred.